Good morning. Good morning. May it please the court, Matthew Green for petitioner Guillermo Perez-Aguilar who is present and seated in the gallery. Arizona's endangerment statute is not a categorical match to the federal definition of crime involving moral turpitude because by including recklessness arising from voluntary intoxication, the statute does not necessarily encompass conduct that includes evil or specific intent to which this court has long held is usually the key to determining moral turpitude. And that's what this court has held in cases like Nunez v. Holder and more recently, Cerrone. Now, this is especially true when we view Arizona's endangerment statute for what it actually is, an assault crime. An assault statute, excuse me, as an assault statute, this court has already established an analytical framework in cases like Upal and Morales-Garcia and again, most recently validated in Cerrone, which require an evil and specific intent to harm. This is the rule, not the exception, as counsel just finished arguing. To rise to the level of a crime involving moral turpitude, an assault crime must include as an aggravating dimension, as this court went into length to discuss in Upal, and that those aggravating dimensions include things such as use of a weapon, a victim who has a special status or trust relationship, a child or actual causation of an aggravated result such as death or serious physical injury, not just the risk of such a result. And on that, I would like to say a couple of things that have been said this morning. The endangerment statute, I think, was characterized by Judge Silverman as an imminent death statute, and I would respectfully disagree. I don't think this is an imminent death statute at all. This is an imminent risk statute, and there's an entirely different risk of death, and there's a difference between almost dying and almost being in a situation where you could have been, you know, could have died. It is a difference. It's a very real difference, and I think that's a... It's the luck of the draw. The lucky drunk doesn't kill somebody. Just puts them at risk. Judge Smith, I'm very glad that you said that, because I wrote down lucky drunk a few times. I do not think that this is, I think it's very, very important to look at the statutory scheme in Arizona. I think it's very important to understand the DUI statutory scheme. And I think it's also very understand in a broader context, which is totally relevant here, to understand how DUI laws have evolved in this country over the last century, and especially over the last 50 years. Because the DUI laws in Arizona, much as they are in most of the country now, they are not drunk driving laws. They're just not. They are impairment to the slightest of degrees, and that's exactly what ARS 28 Section 1381a1 says. And I've tried almost 50 jury trials on DUIs in my career, and I've listened to prosecutors say over and over, this is not a drunk driving case, ladies and gentlemen. This is a case about somebody who maybe didn't intend to do anything wrong, but we know that he or she was impaired to the slightest degree. That's what our legislature in its wisdom has said is criminal in this state. And if you find that this person is impaired to just the slightest of degrees, then he's guilty or she's guilty. It seems to me DUI is not a crime involving moral turpitude.  What about endangerment? It's right there. What about driving under the influence with a suspended license? Well, this Court has said if the person had knowledge that the license was suspended and it's DUI, in Marmalejo Campos, that's a crime involving moral turpitude. This Court gave deference to the BIA in that situation, of course, over pretty vigorous dissent. But that, I would respectfully submit, is what this Court has also explained in Upal Footnote 4 as an exception or an outlier to a non-fraudulent CIMT that doesn't fit in to essentially the Nunez framework that Ms. Hartzler talked a lot about where there's either actual harm, excuse me, I'm trying to remember the, where there's either intent to harm someone, actual infliction of harm upon someone, or an action that affects a protected class of victim. Counsel, you know, like my colleague here, I'm convinced that if this were a DUI, we'd have a different situation here. But that's not what your client pled guilty to. We're dealing with a different statute. And that one goes far beyond, far beyond the, the drinking portion is a question kind of over on the side. We've got the crime, and then the question is, what role, if any, does involuntary intoxication play? Your argument, I gather, is just like in a DUI, it's a question of gradation. Well, it is. And so, in this particular case, though, was that even an issue in your client's plea? Did he just plead guilty to violating this statute? He pled guilty to violating the statute, just like Mr. Leal did. Okay. In that, in that. Under the circumstances, then, for purposes of analyzing the statute on the basis of a categorical analysis. Right. What role, if any, does what you're saying play in our analysis? Is it the reasonable likelihood that this would occur? What is it we're looking at? It's, it's much more basic than that, Your Honor. I mean, post-Moncrief and DeCamp, we know that the full range of conduct encompassed by the statute is relevant. We're supposed to determine whether the full range of conduct encompassed by ARS Section 13-1201 is broader than the generic definition. And I, we talked about Egelhoff. I, I think the government goes to great lengths, at least in its brief in this particular case, to talk about Egelhoff. And if you take a look at the decision in Egelhoff, you take a look at the decision in Leal that cites Egelhoff, you take a look at the government's brief, what do we see? We see words like drunken actor, drunkenness, excess, so excessively intoxicated. The problem for the government, the very big challenge for the government, is to convince this Court that every defendant who is, you know, who is, commits endangerment because they're, because of alcohol, that they are drunk. That they're not, and there are, you all have talked very much. Counsel, with respect, don't you have it backwards? That's your burden, not their burden. Well. Your client pled guilty to the statute. You're, you're making much of the fact that there was drinking involved. But the reality is, that's not the government's burden. This is your burden, to show that this is so out of the norm that, that the statute means all these things that, that don't fit in the categorical situation, and they can't possibly be CIMT. With all due respect, we've already proven it. We've proven it in the factual basis in Mr. Leal's case, which is already part of the administrative record in a published BIA decision, and of course in the record in this case, that pure DUI conduct is encompassed by the statute. I would respectfully submit that we are looking at it potentially from, in the wrong way. The question, perhaps a better question is, could a prosecutor in the state of Arizona, who arrests somebody for garden variety DUI, charge that person with endangerment? And the answer is yes, they could, because it's the same argument that they make when somebody pleads down from an aggravated DUI, and the only reason it's an aggravated DUI is because there's a license component. Okay? But they could make that argument. They could say, boy, this person's going to prove it, and there were other people on the road, my gosh, and there could have been an accident because that person was impaired. Why don't they do it? Because a defense attorney's going to have a field day, say, ladies and gentlemen of the jury, this is outrageous. This is nothing more than a misdemeanor simple DUI, and they're trying to make a mountain out of a molehill. But that can happen in this State, and that can happen under the Arizona endangerment statute. But I would like to posit to the Court that there is a very real framework, and it's a little bit more granular than the three-prong approach endorsed by Nunez and Cerrone, and it is specifically for assault cases. Fernandez-Ruiz talks about it. Upal endorses it, embraces it. And basically what it says is if this Court finds that endangerment is an assault statute, and we brief why it is an assault statute, it's under Chapter 12 of Title 13, and there's a law review article by the Honorable Rudolph Gerber, who's still on the Court of Appeals down the street, who has said, looking back 20 years later after he was on the Commission, that this is a species of assault. There has to be an aggravating dimension, and that kind of aggravating dimension has been specifically defined by this Court. It is non-existent in this case. Thank you, Mr. Green. We'll save a few seconds for rebuttal. Thank you. Mr. Sheffield, have you got anything left? No. Good morning again, Your Honors. Fred Sheffield on behalf of the Attorney General. We're asking that you deny the petition for review in this case, because as in the previous cases, the case turns entirely on the Board's precedent decision in matter of leal, and that is a decision that is entitled to Chevron deference. In this case, unlike the previous case that we discussed, the Board decision followed the Board's precedent decision in matter of leal, and thus the Board relied squarely on matter of leal. Marmolejo's Compos, this Court's en banc decision, dictates that in such an instance where a Board decision squarely relies on a prior Board decision, that that Board decision is entitled to the same level of Chevron deference as the Board's prior decision. So we're dealing with, in this case, the same level of deference that we were in matter of leal in the first case. I just, I want to start by responding to opposing counsel's contention that this is an assault statute. I would note that, indeed, endangerment resides within Chapter 12 of the Arizona Criminal Code, but in Chapter 12 it's entitled Assault and Related Offenses. So our position would be that the chapter, to the extent that that's even relevant, that the chapter encompasses statutes that aren't assault offenses. I would also point this Court's attention to a case called State v. Morgan, a 1981 case. It's at 128 Arizona 362. And in that case, the Arizona Court of Appeals specifically held that endangerment is not a lesser included offense to assault. It differentiated the two. It noted that endangerment, unlike assault, requires a showing of actual risk. Assault, by contrast, requires only that the defendant put the victim at reasonable apprehension of injury, whether or not there was any actual risk. Speaking of lesser included, DUI is not a lesser included of endangerment, is it? No, it is not. These are completely separate offenses. I guess with my remaining time, I would also address some of the arguments that this particular petitioner makes as to retroactivity. This petitioner argued that Leal, even if it was correctly decided, should not be retroactively applied to him. I would point out that petitioner pled guilty to the offense of endangerment in 2011. And there was far from any settled law about whether endangerment was a crime involving moral turpitude. As the arguments this morning, I think, have illustrated, there's been a lot of back and forth about whether concepts of recklessness fit neatly into the notion of crime involving moral turpitude. And for that reason, it would be our position that this is not the type of instance, such as this Court noted in Garfias, for example, where the plaintiff is not entitled to be held accountable for his actions. I think subject to the Court's further questions, I would simply rest on the arguments that I've made in the other two cases and rest on the arguments that we've set forth in our briefs. Thank you, Your Honors. Mr. Green, you had a few seconds left. Thank you. Unless the Court has any other questions, the only other thing that I would like to add is that I do think that there is a very, very real difference between Arizona's endangerment statute, excuse me, and the cases out, excuse me, the cases that the Board has decided and relied on in Leal, Franklin, Wachkow, Medina first, and Ruiz Lopez. And again, every single one of those cases that held that generic recklessness. And we're arguing that Arizona's not generic recklessness because it includes the voluntary intoxication provision that these other cases didn't have. But Franklin was involuntary manslaughter. There was the assault with a deadly weapon, aggravated dimension of a deadly weapon. Wachkow, manslaughter as a CIMT. There was a required death and not just the risk. And Ruiz Lopez, of course, that we've gone over. Thank you. Thank you, Mr. Sheffield. Thank you. The case just argued is submitted. In fact, thank you all. Counsel, Ms. Hartzer, your excellent arguments. We'll stand and recess for today.
judges: Nelson, Silverman, Smith